**STATE of Missouri, Plaintiff-Respondent,**

v.

**William S. WOOLBRIGHT, Defendant-Appellant.**

No. 54294.

Supreme Court of Missouri,
Division No. 1.

Jan. 12, 1970.

Rehearing Denied Feb. 9, 1970.

John C. Danforth, Atty. Gen., Peter H. Ruger, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Bernhardt C. Drumm, Jr., St. Louis, for defendant-appellant.

WELBORN, Commissioner.

Appeal from 5-year sentence, imposed by court under Second Offender Act, following jury verdict finding appellant William S. Woolbright guilty of tampering with a motor vehicle.

On March 13, 1968, Allen Bannister, who resided in a third-floor apartment at 5344 Englewood, Lucas and Hunt Village, St. Louis County, was the owner of a 1967 Pontiac auto which was parked in a locked

garage behind his apartment. At around 1:00 A.M. on that date, he heard a noise which sounded like garage doors being opened. He looked out a window of his apartment and could see two men opening garage doors, including the one in which his auto was parked. When he saw the dome light on his vehicle go on, Bannister ran down the stairs. While running toward his garage, Bannister noticed a parked car in which a third person was seated. As he passed the parked car, its horn was sounded. Bannister went in his garage and found one man in the front seat and one in the rear seat of his auto. A chrome strip separating the driver's side front window from the rear window was bent; the ignition had been tampered with; the back seat was partially removed and items in the vehicle were in disarray. Bannister pulled the person in the rear seat area from the car. He subsequently identified this man as appellant. A brief scuffle between Bannister and the two intruders ensued and Bannister retreated to his apartment and telephoned the St. Louis County Police Department.

Within a few minutes a police officer arrived at the scene and Bannister told him what had occurred. A description of the intruders was given the officer by Bannister.

The description was broadcast by police radio and shortly thereafter, Detective William Brandt of the St. Louis County Police Department arrested appellant and Jerry Patterson while they were walking on Lucas and Hunt Road, approximately one-half mile from the scene of the crime.

At approximately 3:30 A.M., a line-up was conducted at St. Louis County Police Headquarters. Bannister identified appellant as the man he found in the back seat of his auto.

Evidence to support the above statement was produced by the state at appellant's trial for tampering with a motor vehicle. Appellant, testifying in his own behalf, testified that he and Patterson had been drinking in various bars all evening; that at their last place of call they made the acquaintance of two women who invited them to accompany them in their auto; that, in the vicinity of Lucas and Hunt Road and Highway 70, the women asked the men to get out and wait for them to return; that, when the women failed to return after 15 or 20 minutes, he and Patterson started walking along Lucas and Hunt Road and the officer took them into custody.

On this appeal, the first assignment of error relates to the introduction into evidence of three photographs of a 1961 Chevrolet automobile. County police who came to the scene of the offense took several photographs of the scene. One, numbered State's Exhibit 4, showed Bannister's garage and his auto and also the vehicle Bannister said that he had noticed as he ran toward his garage. That vehicle, a 1961 Chevrolet, was shown in three separate photographs, State's Exhibits 3, 5 and 6. Although acknowledging that State's Exhibit 4, showing the general scene, including the Chevrolet, was properly admitted, appellant contends that the admission of Exhibits 3, 5 and 6, showing only the Chevrolet, was erroneous. He contends that evidence pertaining to the Chevrolet was irrelevant and immaterial inasmuch as there was no evidence connecting defendant with that vehicle and that the prejudicial effect of the photographic evidence far outweighed its probative value.

■ Appellant's argument that the exhibits permitted the jury to infer that the appellant had gone to the scene in the 1961 Chevrolet, whereas there was no evidence connecting him with that vehicle, overlooks his concession that the exhibit showing the auto in the general scene was admissible. Such inference could equally be drawn from that exhibit, so that the three additional exhibits would have been, at most, merely cumulative. Furthermore, there was evidence tending to connect appellant with the 1961 Chevrolet. Bannister testified that it was occupied by a third person as he passed it; that its horn was sounded; that

effort was made to drive it away (the ground was covered with snow which perhaps made the auto's removal impossible) and when Bannister, after returning to his apartment to call the police, last saw appellant, he was accompanied by two persons.

No abuse of discretion on the part of the trial court in admitting Exhibits 3, 5 and 6 has been shown. State v. Chiney, Mo. Sup., 434 S.W.2d 567, 570 [6,7]; State v. Taylor, Mo.Sup., 413 S.W.2d 849, 852 [4–6]. State v. Brown, Mo.Sup., 312 S.W.2d 818, 822 [3–7], and State v. Sims, Mo.Sup., 395 S.W.2d 445, 449 [5,6], cited by appellant, applied the general rule, here applicable, permitting photographic exhibits of the scene of the crime. Certainly there was nothing gruesome in the exhibits here offered, comparable with the photograph of a badly decomposed body held erroneously admitted in State v. Floyd, Mo.Sup., 360 S.W.2d 630, also cited by appellant.

Appellant's second assignment of error is based upon a claim of ineffective assistance of counsel, evidenced in four respects:

1. Failure of trial counsel to challenge the propriety of the line-up in which appellant appeared.

2. Failure to produce evidence tending to impeach the credibility of Bannister.

3. Efforts to locate appellant's alibi witness, Patterson, were not as exhaustive as they might have been.

4. Failure of counsel to move for a mistrial or for an instruction to disregard statement of prosecuting attorney, after defense counsel's objection, to prosecutor's argument hypothesizing the presence of Patterson at the scene of the crime, had been sustained.

■ The motion for new trial makes no reference to the first and fourth specifications as evidencing ineffective assistance of counsel. The trial court had nothing before it charging counsel with dereliction of duty in these regards. We will not consider them, raised in this court for the first time. S.Ct. Rule 27.20(a), V.A.M.R.

Specifications 2 and 3 were set out in the motion for new trial. According to the motion, such specifications were inserted at the express direction of defendant. Because of these charges, trial counsel was permitted to withdraw and another attorney was appointed to represent defendant on the hearing on the motion for new trial.

Such hearing reveals that the second specification dealt with testimony of Bannister that when he saw defendant in his garage he was wearing a black coat with a fur collar. Bannister was asked whether he had testified at the preliminary hearing that defendant was wearing a green coat with a fur collar. Bannister did not recall having so testified. Defendant testified that, at the preliminary, Bannister testified that defendant was wearing a long green coat. Defendant stated that he mentioned Bannister's preliminary testimony to Peter Straub, a member of the Public Defender's staff who represented him at the preliminary hearing.

Straub, testifying on the hearing on the motion for new trial, stated that he had made notes of the testimony given at the preliminary. He stated that his notes relating to Bannister's testimony as to defendant's attire read: "long coat, fur collar —green." Straub's recollection was that the green color referred to the collar. Defendant's trial counsel testified that he had discussed the case with Straub after receiving the assignment to represent defendant. He stated that he looked over Straub's notes and found nothing that he thought would be helpful at the trial.

■ On this appeal, appellant asserts that failure of his trial counsel to call Straub to testify about Bannister's preliminary testimony evidences ineffective assistance of counsel. However, the testimony of Straub at the hearing on the motion for new trial revealed that, had he been called as a witness, he would not have been able to testify that the testimony of

Bannister at the trial differed from that which he gave at the preliminary hearing. At best, Straub could have testified that, at the preliminary, Bannister said defendant was wearing a coat with a green collar. Failure to produce this testimony could not have prejudiced defendant.

On the failure to locate Patterson, defendant testified that, at his first conference with his trial counsel, on July 15, 1968, he asked him to subpoena Patterson as a witness who could substantiate his alibi defense. Defendant testified that he had written Patterson's wife at 1220 North Market and that she had replied that Patterson would testify for him. Trial counsel testified that, at his original conference with defendant, defendant had given him Patterson's address as 1211 North Market. Counsel testified that there was no telephone listing for that address and that he addressed a letter to Patterson, using such address, but the letter was returned, with a notation "moved, left no address."

He testified that, after the trial began, defendant gave him another address on Madison. Defendant's mother and sister were requested to go to such address to locate Patterson and did go there, but did not find Patterson. With the assistance of defendant's mother and sister, other leads provided by defendant were pursued, to no avail. The trial was recessed early on the second day, to permit an effort to find Patterson, but attempts to locate him were unsuccessful. Counsel testified at the hearing on the motion for new trial that he was unable to drive an auto at the trial and could not go in person to the various places suggested so that his "efforts were strictly by the phone and by the mail."

Appellant argues that the failure to produce Patterson evidences inadequacy of representation because trial counsel did not petition the court for funds with which to hire an investigator to locate Patterson.

■ The evidence at the hearing on the motion for new trial demonstrated reasonable efforts on the part of defendant's trial attorney to locate Patterson. That the efforts were unsuccessful does not mean that another course might have been followed which would have been successful. Second guessing counsel on this score is not the test of the adequacy of counsel's efforts in his representation of defendant.

■ The claim of inadequacy of representation by trial counsel is without merit. State v. Worley, Mo.Sup., 371 S.W.2d 221, 223–224 [6] [8]; Holt v. State, Mo.Sup., 433 S.W.2d 265, 267–268 [1–3]; State v. Cook, Mo.Sup., 440 S.W.2d 461, 466 [9, 10]. Appellant's suggestion that the standard laid down in those cases should not be applied in a case involving court-appointed counsel is rejected. See Slawek v. United States, 413 F.2d 957, 959 [2–4], (8th Cir., 1969).

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

HOLMAN, J., and HENSON, Special Judge, concur.

SEILER, P. J., concurs in result in separate concurring opinion filed.

STORCKMAN, J., not sitting.

SEILER, Presiding Judge (concurring in result).

Although I concur in the result reached on the facts in the principal opinion, I am doubtful about the standard of ineffective assistance of counsel resting on whether the trial has been reduced to a mockery or a farce, if that is what the reference to the cited cases in the final paragraph means. According to Webster's International Dictionary, 2nd Ed., Unabridged, mockery means "That which is ridiculously or impudently unsuitable" and farce means "Ridiculous or empty show". Both definitions use the word ridiculous. Ridiculous, according to the same authority, means "Unworthy of serious consideration; highly

absurd or amusing". Synonyms are "ludicrous, preposterous, absurd". While all would agree that if a defendant's trial has been a mockery or a farce, he would be entitled to a new trial, I doubt if a defendant has to show anything this extreme before he can establish ineffective assistance of counsel. Rather, as pointed out in Brubaker v. Dickson (C.C.A. 9) 310 F.2d 30, 37, while due process does not require "'errorless counsel, and not counsel judged ineffective by hindsight, [it does require] * * * counsel reasonably likely to render *and rendering* reasonably effective assistance.'" This in my opinion is a much more realistic standard by which to judge a claim of ineffective assistance of counsel. See also Kott v. Green (D.C.N.D. Ohio, W. D.) 303 F.Supp. 821, 822, where it is said: "* * * Every criminal accused who desires counsel should be entitled to expect his lawyer to perform at least as well as any attorney with ordinary training in the legal profession, and to exercise the usual amount of skill and judgment exhibited by an attorney conscientiously seeking to protect his client's interests. To hold that criminal defendants are not entitled to this normal level of representation would be to undercut the policies behind Gideon v. Wainwright and its progeny."