Conlyn Leroy McNAMARA, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 57542.

Supreme Court of Missouri, Division No. 1.

Nov. 12, 1973.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 10, 1973.

Lashly, Caruthers, Rava, Hyndman & Rutherford, Darold E. Crotzer, Jr., St. Louis, for movant-appellant.

John C. Danforth, Atty. Gen., Allan Seidel, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Appeal from denial of relief from two convictions and sentences to concurrent 10-year terms for robbery in the first degree.

In April, 1970, movant-appellant Conlyn Leroy McNamara was arrested on two charges of robbery in the first degree. His sister arranged for the employment of Karl Lang to represent appellant, with payment to come through an inheritance then in process of being distributed to appellant.

In December, 1970, one of the cases was tried by Lang to a jury which returned a verdict of guilty. Lang filed a motion for new trial. On February 19, 1971, appellant and Lang appeared in circuit court and appellant waived his right of appeal on the charge for which he had been tried and the court, under the Second Offender Act, imposed a 10-year sentence. Appellant also on that date entered a plea of guilty to the second robbery charge and a sentence of ten years was imposed, the two sentences to run concurrently.

On June 29, 1971, McNamara filed a motion under Rule 27.26 to vacate both sentences. A hearing was held on the motion in October, 1971, and the trial court denied relief.

On this appeal, appellant attacks the adequacy of his representation by counsel, the voluntariness of his waiver of appeal and of his plea of guilty, and the trial court's failure to provide him a transcript of the jury trial proceedings.

The inadequacy of representation claim is based upon Lang's failure to interview prospective witnesses who might have testified favorably to appellant at his trial.

McNamara testified that in one of his first conferences with Lang, within two months of his arrest, he gave Lang the names of two witnesses, Mr. Edwin Thomas and Miss Sandy Hogan. He told Lang these people might have been with him on the night of the robberies and if Lang "would check them out and find out, they might remember." He told Lang where the witnesses lived, but Lang told him that the testimony of these witnesses wouldn't be any good.

Lang testified that, when he first talked to McNamara, he discussed defenses, including an alibi, and McNamara told him he didn't know where he was at the time of the robberies. He saw McNamara eight

or nine times prior to the trial and Mc-Namara suggested no possible witnesses. According to Lang:

"About the time the trial took place, he told me, either during the trial or just shortly before the trial, that he could get a couple of witnesses to say where he was on the night that the robbery we were trying took place; and after not having given me any witnesses' names, or producing any witnesses, and had nobody contacted me in his behalf all those months, and the way he mentioned it to me about he could get a couple of witnesses to say where he was, I wasn't about to use them, and I told him that I wasn't going to use that type of witness because I didn't feel that—I thought they were perjured witnesses."

Lang testified that he didn't ask Mc-Namara the names of the persons and that McNamara didn't volunteer the names.

Miss Hogan testified at the hearing. She stated that she saw McNamara socially in March, 1970, but could not say whether she was with him on the nights of the robberies, March 21 and 26. She said: "I don't remember. It's possible." She had received a letter from McNamara while he was in jail, but made no attempt to contact McNamara's attorney.

The trial court concluded that Lang was under no duty to seek out the witnesses referred to by McNamara to support an alibi defense, "considering the circumstances and the manner in which they were offered."

■ This finding is not clearly erroneous. Rule 27.26(j), V.A.M.R. Although Lang had a duty to make such investigation as the circumstances required (McQueen v. State, 475 S.W.2d 111 (Mo. banc 1971)), he also had the right to exercise his professional judgment regarding leads suggested by the defendant. Mr. Lang was an experienced criminal lawyer, well aware of his obligation not to present perjured testimony in support of his client. His experience had shown that alibi evidence was the first matter to be discussed with a client, when recollection of the times involved would be fresh. Movant could suggest no evidence of his whereabouts early. As the time for trial approached, some nine months later, he suggested to the attorney that he could "get" some witnesses who would testify to his whereabouts at the time of the crime. The trial court's conclusion that a lawyer, in such circumstances, is justified in summarily rejecting such a suggestion, is certainly not clearly erroneous.

In this case, one of the witnesses movant had in mind (or referred to) did testify and was unable to state where movant was at the critical times. Movant's attorney suggests that the witness's memory could have become dim because of failure to pursue earlier her knowledge. This may well be true, but movant personally must share responsibility for such an occurrence, inasmuch as he waited nine months before suggesting that such testimony might be available.

In the circumstances of this case, the trial court's finding is not erroneous. See Ingle v. Fitzharris, 283 F.Supp. 205, 207[5] (N.D.Cal.1968), affirmed, 411 F.2d 611 (9th Cir. 1969).

■ Appellant attacks the adequacy of the inquiry into his plea of guilty to show that his plea was intelligently, knowingly and voluntarily entered. Rule 25.04. He attacks particularly the absence of any inquiry into the factual basis for the plea. The trial court found that such inquiry was made and that the record of the plea so demonstrates. The record does so and there would be nothing gained by setting out in this opinion the colloquy at length. The facts were stated and movant acknowledged his participation in the crime. The transcript of the sentencing supports the trial court's finding that the plea was knowingly and voluntarily made and the trial court's finding on the issue has not been shown to have been clearly erroneous.

Appellant next contends that the trial court erred in failing to find that Lang coerced appellant into pleading guilty to the one charge and into withdrawing his appeal from his conviction on the other.

The testimony of movant and Lang diverges in this regard. Appellant's contention is, of course, bottomed upon his testimony. According to appellant, Lang told him that if he did not waive his appeal and plead guilty, he would get a longer sentence. According to movant, "I didn't know what to do. The only thing I could do was tell him to do what he could do." He testified that he waived the appeal and pleaded guilty because of Lang's statement about the poor chances on appeal and on a second trial.

Lang testified that he discussed the appeal at length. Lang had filed a motion for new trial. He stated:

"I advised him that his chances on the appeal were questionable and that even if he won his appeal, the State was prepared to try him on the second case; and since we lost the first case, I saw no reasonable expectation that he was going to win the second case; and if he lost the second case, the time would probably be assessed consecutively; and I advised him that if he could—if he wanted to plead guilty on both charges, the Court would probably run them concurrent and waive his appeal; and I thought that would be the fastest way out of his predicament, the fastest way he could get out of jail; and I advised him, based upon my experience, that it would be in his best interest, if he was thinking about getting out of jail, the fastest way of getting out of jail would be waiving the appeal and plead guilty on the second charge.

＊　　＊　　＊　　＊　　＊　　＊

"He wasn't happy about it, but he agreed to do it. He realized it was the best way, the fastest way out."

On this evidence, the trial court's findings that the plea was voluntary and that "movant elected to waive his right to appeal having the benefit of the advice of a most experienced criminal trial attorney" are not clearly erroneous.

■ Appellant argues that the appeal waiver procedure should follow the lines of a plea of guilty, as required by Rule 25.04. No such requirement has been imposed by this court.

■ After the evidence on both sides had closed, movant's counsel requested that the court provide movant with a transcript of the proceedings at the jury trial "because the evidence in that case may be significant in this motion." The trial court denied the request on the grounds that the motion was untimely. On this appeal, that ruling is assigned as error. Appellant contends that the transcript was necessary for determination of his allegation of ineffectiveness of counsel and bad faith on the part of counsel in failing to perfect his appeal.

State v. Keeble, 427 S.W.2d 404 (Mo. 1968), lays down the rules which determine the right of an indigent defendant in a 27.26 proceeding to have, at state expense, a copy of the transcript of his original trial. The court there held that, when the 27.26 movant alleges sufficient facts entitling him to a hearing and when "consideration of a part or all of the original trial transcript is necessary to a determination of the question or questions raised, then a partial or complete transcript should be ordered." 427 S.W.2d 408[5, 6]. Keeble points out that when effective assistance of counsel is in issue, a transcript of the trial would generally be required. Here, however, that question was restricted to a particular issue which could be disposed of without the trial transcript.

Appellant points out that his motion charged his counsel with bad faith in failing to preserve trial errors and in inducing him to abandon his motion for new trial and appeal. Appellant asserts that the transcript was necessary for determination

of that complaint. The appellant in no way supported a charge of bad faith on the part of his counsel. He did charge that his counsel told him that the points raised in his motion for new trial were of doubtful merit. However, there is nothing to substantiate any claim of bad faith in such advice and the fact that another attorney, in looking at the transcript, might disagree with movant's trial counsel would not demonstrate bad faith. Mr. Lang testified clearly as to the considerations which he presented movant in connection with the appeal.

In these circumstances and considering the timing of the request for the transcript, the trial court's denial of the request was not error.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.