**Charles Frederick TROUT, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. KCD 27285.**

Missouri Court of Appeals,
Kansas City District.

May 5, 1975.

Rehearing Denied June 2, 1975.

William Erdrich, Asst. Public Defender, St. Joseph, for appellant.

John C. Danforth, Atty. Gen., Scott A. Raisher, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

PRITCHARD, Chief Judge.

In March, 1970, appellant was convicted by the verdict of a jury of the crime of assault with intent to kill with malice aforethought. The jury was unable to agree upon punishment and thereafter, the court sentenced him to life imprisonment in the Department of Corrections.

▊ In this appeal from the denial of appellant's second amended motion to vacate and set aside the judgment and sentence of the court, filed February 4, 1974, the first point is, "The court erred in finding that the appellant was rendered effective assistance of counsel." That assignment is of course wholly insufficient under Rule 84.04(d), V.A.M.R., in that it fails to "state briefly, and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous." The fact that appellant is represented on this appeal by the *public defender* does not relieve that person of the obligation to comply with the rules.

In examining appellant's argument portion of the brief, and adverting to the state's brief, it appears that appellant's complaint of ineffective assistance of counsel is that his trial counsel did not pursue his appeal which was dismissed in the September Session 1971 by the Supreme Court of Missouri because of appellant's failure timely to file a transcript of

the record of trial proceedings. Although, because of the inadequacy of briefing, this appeal is subject to dismissal as in any other case, the appeal will be retained and the merits of the question determined.

Paragraphs 1, in part, and 2 of the second amended motion allege that appellant was denied effective assistance of counsel for the reasons that he failed to perfect an appeal and that he failed to inform appellant of the need for certain necessary documents in order to perfect an appeal, and through counsel's inaction appellant was caused to lose the right of appeal.

Appellant testified that his parents hired Mr. Lewis Randolph as his attorney; that he was tried to a jury, found guilty and was sentenced to life imprisonment. Appellant did not remember whether an appeal was filed or that his attorney advised him of the right of appeal. He did not correspond with his attorney concerning the appeal, but he did receive a letter from the attorney general that the appeal was dismissed. Appellant knew that Mr. Randolph was talking to his father about the cost of a transcript. Appellant did remember that after he was sentenced, his attorney "jumped up immediately and said he was going to appeal it right then." Appellant was relying pretty much on his father and mother to deal with his attorney.

Appellant's father, Mr. Dale Trout, hired and paid Mr. Randolph for the defense of the case. Mr. Trout was with Mr. Randolph when the notice of appeal was filed in the clerk's office, and Mr. Trout paid the filing fee therefor. Mr. Randolph told him that he would have to have the transcript made "before we could go ahead with a new trial," and the costs of the transcript as being between $500 and $600 was mentioned. Mr. Trout talked with the court reporter who told him he wanted a down payment to go ahead with the transcript. "Q I see. Did you at that time reach any agreement with him or give him any indication for payment of the transcript? A No; to be honest, I didn't. I told him when you get the transcript we will guarantee you the money." Mr. Trout did not again hear from the court reporter. After that conversation, he talked with Mr. Randolph in his office, "and I told him about this condition. He said, in so many words, he told me the man is going on vacation, probably wants some vacation money. I said when we get the transcript I will guarantee the money." He never did tell Mr. Randolph to "drop the appeal," but Mr. Trout did know the appeal had not gone through, but did not know why.

On cross-examination, Mr. Trout acknowledged that Mr. Randolph had probably performed his duties in a proper manner through trial. The money which Mr. Trout paid Mr. Randolph was for his services through the filing of the motion for new trial, which was done. Mr. Randolph was never paid to go beyond that. The reporter told Mr. Trout over the phone that he had done approximately $75.00 worth of work on the transcript, "and before he went any further he wanted $250.00 down. I didn't give him too much satisfaction on the phone. I felt that when the transcript was completed that we would pay, and I would guarantee him the money. There was no provisions made in any way in escrow or anything. Nobody said anything; that was just word of mouth, in other words." On examination by the court, Mr. Trout testified that the court reporter said to him that he "had already done $75.00 worth of work on it and he hated to go ahead and make up this transcript and receive nothing." It was Mr. Trout's understanding that the reporter would do no more work until he paid the $250.00. Mr. Randolph did not tell Mr. Trout to give him $250.00 to guarantee the transcript.

Mr. Randolph testified that the Trouts employed him to defend appellant on a fee basis that would extend through the filing of a motion for new trial, arguing it, and the filing of a notice of appeal. He ordered a transcript and discussed its cost with the Trouts, and that the reporter

wanted his cost in advance. He told them that if they could furnish the money for the appeal, including the attorney fees and the transcript cost, he would handle it or they could get another attorney or they could try to proceed as a pauper. Mr. Randolph's way of operating was not to pay for transcripts unless clients brought the money to his office with directions that he pay the reporter. As for payment for his legal services for the appeal, Mr. Randolph thought it would have been around $1,000.00 to $1,200.00 for preparation and appearance. The Trouts vacillated over a period of time as to whether appellant should appeal, and finally, it was Mr. Randolph's understanding that they did not wish to pursue it, they having had numerous conferences about the matter with appellant himself.

■ It should be noted here that there never was any indication that appellant was indigent, either before or after the trial was had. Appellant says that Mr. Randolph never did confer directly with him concerning his right of appeal and the matter of perfecting the same by the timely filing of a transcript of the trial record. What the record does show is that appellant left the conferences with his counsel after trial to his parents. It was they with whom counsel dealt with respect to paying for a transcript. It was not left solely to counsel as to whether an appeal would be taken as was the distinguishable fact from the situation here, in Jones v. State, 445 S.W.2d 311, 314[2] (Mo.1969), where the trial court found the fact on conflicting evidence. Clearly counsel here was employed only to do specified tasks: defend appeal from preliminary hearing, through the trial of his case; and through the filing of a motion for new trial and the filing of a notice of appeal thereafter. For these services he was paid. It is not incumbent upon counsel to take further steps upon his own, absent authority therefor and absent an agreement for the payment of costs and expenses of an appeal, and for further attorney fees. Counsel did not

abandon appellant. The record shows that he was willing to pursue the appeal if the expenses and fees were paid. He was guilty of no neglect of appellant's interests as to be within the pronouncement of ineffective assistance of counsel of Brown v. State, 512 S.W.2d 404, 408[9, 10] (Mo. App.1974). Under all of the evidence, the findings of the trial court that appellant was not denied effective assistance of counsel in the matter of his appeal is not clearly erroneous. Rule 27.26(j).

Appellant next claims that the trial court erred in denying his request for a copy of his original trial transcript for his use in presenting certain other allegations of his second amended motion to vacate the judgment and sentence.

Aside from the issue of counsel's alleged failure to perfect an appeal, paragraph 1 of appellant's second amended motion alleges that he was denied effective assistance of counsel for the reason that his counsel failed to file proper motions to suppress statements of appellant and the identification of appellant. During the hearing of this motion counsel for the state first indicated that he did not see how the court could make an intelligent ruling on a 27.26 motion without the transcript of the trial proceedings. The court then stated that if it was indicated that a transcript was needed, it would order it before decision. The matter came up again at the close of appellant's evidence when his counsel stated to the court that it was all the further he could proceed without the assistance of a transcript. The court inquired as to what was expected to be proved with the transcript, and counsel answered that it had to do with motions that might have been made, such as a motion to suppress the statements of and the identification of the appellant. The court stated that the record would show the pre-trial motions to suppress. Counsel acknowledged that to be so if they were filed normally, but that it was not unknown that these motions are made early during the

trial and determined perhaps out of the hearing of the jury.

As noted, the allegations of the second amended motion to vacate the judgment and sentence are that appellant was denied effective assistance of counsel because he failed to file proper motions to suppress statements of petitioner and of the identification of petitioner. No facts to support the allegations are alleged. For instance, the nature of the statements are not set forth; it is not alleged whether they were confessions or admissions or why they would not be admissible at trial (e. g., duress, coercion, failure to advise appellant of his rights under the Miranda rule). As to identification, it is not alleged as to why any identification would not be admissible. Was it because of an impermissible lineup situation, or some unduly suggestive procedure used? The allegations as made are bare conclusions and are insufficient to state any grounds for relief, and for this reason alone the trial court's finding that there was no need for a transcript is not clearly erroneous. See State v. Miner, 498 S.W.2d 814, 815[1] (Mo.App.1973); State v. Moore, 435 S.W. 2d 8, 16[14, 15] (Mo. banc 1968), "[T]he motion to vacate must plead a factual basis by which the charge can be proved, including the source and nature of the facts rather than mere conclusions. (Citing cases.)"; State v. Hale, 400 S.W.2d 42 (Mo. 1966). Procedurely, in addition to the requirement that facts and not conclusions be pleaded, the better practice would be to set forth in the motion that a partial or full transcript of the trial proceedings would be needed to support factual allegations, thus giving the trial court advance notice and time to have it prepared. See State v. Keeble, 427 S.W.2d 404, 408[5, 6] (Mo. 1968); and McNamara v. State, 502 S.W. 2d 306, 309 (Mo.1973).

A further reason that the judgment is not clearly erroneous is that appellant's trial counsel was present and testified at this hearing. He could have been, but was not, asked as to whether he filed the motions to suppress, and the matter could have been fully explored. If it had been indicated, the motions could have been amended, or could have been treated as having been amended, to conform with the proof.

Paragraph 3 of the second motion sets forth, "Petitioner was denied his right to counsel at a critical stage of the proceedings." This too is a conclusion and an insufficient statement of any claim to relief.

Paragraph 4 of the same motion alleges, "Petitioner was mentally incompetent to defend against the charges filed against him at the time of the trial." In this respect, appellant testified that he remembered being examined at Fulton State Hospital before the trial, and "Q And you recall the doctors being here to testify right where you are sitting now to the effect that they found you were competent within the meaning of the law? A Yes and no. * * * Q You are telling this Court that because you were nervous then you were not competent to understand what was going on? A Well, on certain questions you asked me, you know, I would get confused, get confused and all nervous." Clearly appellant had been examined for mental defect prior to trial. He does not demonstrate in any respect how a transcript would aid him in establishing any mental incompetency to stand trial. Again, the trial court was not advised as to the need of a transcript to prove this allegation prior to hearing; and again appellant's counsel was available to explore the matter. Appellant has failed to sustain his burden of proof on his allegation, either on its merits or the need for a transcript.

The judgment is affirmed.

All concur.