**Walter Emel BARTON,
Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 11118.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 6, 1979.

Thomas J. O'Neil, Lebanon, for movant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

MAUS, Judge.

By his motion under V.A.M.R. Crim. Rule 27.26 appellant, Walter Emel Barton, seeks to set aside a sentence of 20 years for assault with intent to kill with malice aforethought committed upon the female operator of a service station in the vicinity of Camdenton. The sentence was imposed as the result of a jury trial and a verdict of

guilty. While the record of the background of the case is sketchy (the trial transcript was not introduced into evidence and is not before this court)[1] the victim gave a positive description of the appellant, including the fact he was missing two front teeth. She made an unequivocal in-court identification. While in custody the defendant made a written and then a verbal tape recorded confession. Upon a motion to suppress, the tape recorded confession, as well as a money bag found at the plant hereafter referred to, were excluded from the evidence. Trial counsel for the appellant were employed by appellant's fiancee and her mother. The appellant filed a motion for a new trial and upon the same being overruled, a notice of appeal. Subsequent to receiving advice and alleged information from fellow inmates at the penitentiary, he withdrew his appeal in favor of a motion under Rule 27.26.

While his motion alleged additional grounds, the appellant has preserved a single point on appeal. That is, he was denied effective representation by counsel by reason of their failure to exercise the customary skills and diligence of reasonably competent counsel because they failed to locate witnesses to support appellant's defense.

When the amended motion was drafted, by this charge appellant was no doubt referring to witnesses to a narrowly avoided automobile collision as well as the "plant witness" referred to later in this opinion. In his testimony appellant related that when he was driving past the station in question, he almost had a collision with a red Falcon automobile coming from the station. This automobile followed him through Camdenton to the point where he turned from the highway to go to the plant where his fiancee worked. When he had straightened up his automobile, he turned around and two people in the Falcon waved at him. Although he talked with counsel seven times before trial, appellant did not tell them of this incident. By sheerest of coincidence, at the penitentiary the appellant encountered the two persons who had waved at him. The driver of the Falcon testified at the 27.26 hearing. He generally confirmed the near collision and following events. In addition, he related that when he was leaving the station a Kansas City acquaintance pulled in behind him. Later in Kansas City this acquaintance explained to the witness that he got the money for a party he sponsored "at the gas station". This witness didn't tell appellant's 27.26 counsel of this incriminating alleged statement until the day of the hearing because he didn't think it was important. Upon the advice of his 27.26 counsel who interviewed the Falcon passenger who was in the courtroom, the appellant elected not to call that passenger as a witness. Without reciting further details, the record clearly substantiates the determination of the trial court that the testimony of the Falcon driver was an "absolute concoction". In his brief, appellant only obliquely complains that his trial counsel did not spend enough time with him to "get out of him" information concerning the Falcon witnesses. This contention is not supported by the record and is denied.

Appellant testified that he drove into the parking lot of the plant at approximately 7:00 p. m. After he parked he saw a man come from the plant and walk toward a white pickup truck and a white automobile. There was another automobile parked between appellant and the route of this man. Appellant waved, and the man nodded and walked on. The man was described as a young man, about appellant's height with long, light brown hair, wearing a shirt (no coat) and blue jeans. It should be noted the date was February 4, 1976, and the record reveals it was cold and windy. Appellant's presence at the plant at 7:00 p. m. would have supported his defense.

Appellant told trial counsel of this possible witness. Within a few days after employment, one of his counsel went to the

---

1. The trial transcript is not necessary to the disposition of this case. *McNamara v. State*, 502 S.W.2d 306 (Mo.1973).

plant at shift change time. He interviewed employees but was unable to find anyone who knew of a man that met the description of this witness. Counsel told appellant of this experience. The appellant suggested that he get his fiancee to help locate the witness. Counsel discussed the witness with the fiancee and she agreed to try and locate him. Later she and her mother reported to counsel they thought they knew who he was, but he was on drugs, they were afraid to approach him and they felt he would be of no benefit to the appellant. The fiancee also reported this to the appellant. He asked that she find out his name and tell him or his counsel. In view of the trial court's findings, the fiancee's testimony that she did not undertake to locate the witness must be disregarded. In her testimony she said she knew the employees at the plant and knew that the alleged witness was important to the appellant's defense. But, as she testified at the 27.26 hearing referring to the appellant, "Somebody might have seen him. I don't know who". Apparently, appellant's position is based upon a question posed to one of his trial counsel who did not go to the plant and his response thereto. The question was, if the trial counsel had gone to the plant was it "possible" that he "might have" located the witness. The response was, "anything's possible".

■ There is no question but what the defendant was entitled to adequate representation by counsel. Nor is there any question but what in most cases adequate representation includes investigation by counsel. *Jones v. State,* 491 S.W.2d 233 (Mo.1973). However, "all that is required is investigation that is adequate under the circumstances of each particular case". *Pickens v. State,* 549 S.W.2d 910, 912 (Mo. App.1977).

■ As determined by the trial court, counsel made a reasonable personal effort to locate the alleged witness. That fulfilled their responsibility. *State v. Woolbright,* 449 S.W.2d 602 (Mo.1970); *Brown v. State,* 574 S.W.2d 501 (Mo.App.1978). In addition, both counsel and the appellant enlisted the aid of his fiancee to locate the alleged witness. Counsel were entitled to at least partially rely on her efforts. *State v. Woolbright,* supra; *Pickens v. State,* supra. It should be noted that at the time of the 27.26 hearing the fiancee was still employed at the plant. Appellant produced no further information about the alleged witness or any attempt to locate him. Counsel were not required "to follow a will-o-the-wisp". *Monteer v. State,* 506 S.W.2d 25, 28 (Mo.App.1974). For additional cases involving the adequacy of counsel in locating witnesses see: *McNamara v. State,* 502 S.W.2d 306 (Mo.1973); *Colthorp v. State,* 466 S.W.2d 689 (Mo.1971); *Jackson v. State,* 465 S.W.2d 642 (Mo.1971); *Aikens v. State,* 549 S.W.2d 117 (Mo.App.1977); *Jackson v. State,* 540 S.W.2d 616 (Mo.App.1976).

"[T]he fixing of a standard by which effectiveness of counsel can be measured has been very difficult." *Seales v. State,* 580 S.W.2d 733 (Mo. banc 1979). The standard has been defined as " 'whether his actions or lack thereof made the trial a farce or a mockery of justice' " or " 'circumstances . . . demonstrate that which amounts to a lawyer's deliberate abdication of his ethical duty to his client' " or "whether the accused 'was denied a fair trial' ". *Seales v. State,* supra, p. 736. In that prospective opinion filed April 25, 1979, our Supreme Court adopted the standard that inadequate representation is failure "to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances".

■ The trial court found that counsel adequately and properly represented the appellant. The burden of proof was upon appellant to establish otherwise. Rule 27.-26(f). Measured by any standard, he failed to do so. The judgment of the trial court is affirmed.

All concur.